UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DEBBIE ANN TAYLOR,

    Defendant.

Case No. 18-20769
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY
MOTION FOR COMPASSIONATE RELEASE [283]**

---

Debbie Taylor has served 14 months of her below guidelines range sentence of 55 months. She now asks the Court, on an emergency basis, to end her prison term based on what she considers "extraordinary and compelling reasons," namely "serious medical conditions, and lingering COVID-19 pandemic problems, and MERSA . . . .'"" (ECF No. 283, PageID.4738.)

But "district courts may not rely on facts that existed at the time of sentencing when determining whether extraordinary and compelling grounds for release presently are shown." *United States v. Wright*, No. 17-20328, 2024 U.S. Dist. LEXIS 60609, at *12 (E.D. Mich. Apr. 2, 2024). And Taylor's medical condition is anything but new. It affected the scheduling of her sentencing, dominated her counsel's allocution at sentencing, and factored heavily in the Court's ultimate determination of a well-below guidelines range sentence. The Sixth Circuit has also made clear that COVID-19 is no longer an extraordinary and compelling reason for a sentence

reduction. Thus, the Court does not need a response from the government or a hearing. *See* E.D. Mich. LR 7.1(f). Taylor's emergency motion for compassionate release (ECF No. 283) is DENIED.

**I.**

Debbie Taylor was the office manager at Doctor's Creative Care in Detroit, Michigan. The practice, run by an elderly doctor, was a "pill-mill." Taylor, who had no medical license, "was present with the doctor when [he] saw patients, decided what controlled substances and quantities would be written for patients, wrote the prescriptions and presented them to the doctor for signature, and filled in patient charts." (ECF No. 147, PageID.464.) She "directed the doctor to sign controlled substance prescriptions so that she and her conspirators . . . could obtain controlled substances that could be re-sold in the illegal street market." (*Id.*) These included many commonly abused opioids. Taylor knew that prescriptions signed by the doctor at her direction ended up being sold illegally and that a co-conspirator brought fake patients to the clinic for the purpose of obtaining such controlled substance prescriptions. (*Id.* at PageID.464–465.) She "also directed the prescribing of unnecessary non-controlled substance prescriptions or 'maintenance medications' to induce the pharmacies she worked with to fill the controlled substance prescriptions." (*Id.* at PageID.465.)

These were all facts that Taylor admitted when she pled guilty to conspiracy to distribute prescription drug controlled substances. (ECF No. 147.) Her sentencing, however, did not take place for nearly a year after her plea. The Court granted

numerous adjournments due to Taylor's significant health issues. (*See, e.g.,* Text Orders and Minute Entries Dated Jan. 8, 2024; Feb. 27, 2024; Apr. 18, 2024; May 21, 2024; June 21, 2024.) Taylor was given this time to have testing and treatment and was directed to provide supplemental medical records so that the Court had a full understanding of her health conditions at sentencing. (*Id.*) Making matters worse, just prior to sentencing, Taylor's husband was attacked by a pit bull and suffered serious injuries. (ECF No. 253, PageID.3432.)

Sentencing finally occurred on August 13, 2024. (ECF No. 253.) Given the substantial quantities of controlled substances that Taylor was involved with—over 375,000 dosage units (ECF No. 253, PageID.3440)—and the managerial role enhancement the Court applied, Taylor's sentencing guidelines range was calculated at 168–210 months. (ECF No. 253, PageID.3436.) Her counsel "ask[ed] for a variance because of [Taylor's] health and . . . because of her husband's as well." (*Id.* at PageID.3442.) The Court carefully considered Taylor's health issues. In addition to all of Taylor's pre-existing health issues set forth in the Presentence Report, the Court remarked on some of her more recent diagnoses:

> In 2017, you were diagnosed with bipolar disorder, PTSD, ADHD, panic disorder and subsequently with drug dependence withdrawal. You've been getting treatment while on bond and are receptive to continuing the treatment. You've denied any substance abuse issues. More recently, you had your gallbladder removed and a cyst removed from your uterus. This has led to additional testing and biopsies. And I know you have another endoscope next week for a separate issue, I guess, to continue observation they're doing on you for possible stomach cancer. But I know that's been ongoing for many months now. The cyst removal is, I imagine, related to the hemorrhaging-cyst issue that we discussed earlier.

3

(ECF No. 253, PageID.3446.) The Court balanced the serious nature of the offense, namely the staggering amounts of controlled substances at issue, against Taylor's lack of criminal history, years of compliance on bond, and her and her husband's health issues. In the end, the Court sentenced Taylor to a prison term of 55 months— a substantial downward variance from even the bottom of the 168–210 month guidelines range. (*Id.* at PageID.3449.) At sentencing, the Court extended Taylor's self-surrender date to give her time for additional medical testing and for her husband's first surgery. (*Id.*) Subsequently, Taylor was given three more self-surrender extensions to seek medical treatment and testing. (ECF Nos. 241, 246, 251.)

Having now served only 14 months of her already reduced sentence, Taylor seeks compassionate release based on her continued health issues. (ECF No. 283.)

## II.

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is compassionate release. The First Step Act of 2018 allows the Court to reduce a defendant's sentence if it finds, after a defendant has exhausted her administrative remedies or 30 days after the warden receives a request for compassionate release, that "extraordinary and compelling reasons" warrant a reduction; that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and that the sentencing factors under 18 U.S.C. § 3553(a), to the extent they apply, support a reduction. 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission amended its policy

statement in U.S.S.G. § 1B1.13 to cover compassionate release motions filed directly by defendants (as well as those brought by the Director of the Bureau of Prisons (BOP)). It remains the case, though, that without an "extraordinary and compelling" reason, the district court may not grant compassionate release. *See United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021).

### A.

The First Step Act's exhaustion requirement is mandatory. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Taylor contends that she "exhausted her administrative remedies with her letter submitted to the warden by her counsel which was denied on April 9, 2025." (ECF No. 283, PageID.4742.) While the letter is not attached to the filing, the Court assumes it was sent and that no response was provided, thereby satisfying the exhaustion requirement.

### B.

Congress assigned to the Sentencing Commission "the task of describing what could be considered extraordinary and compelling reasons for sentence reduction." *United States v. Bricker*, 135 F.4th 427, 433 (6th Cir. 2025) (citing 28 U.S.C. § 994(t)). The Sentencing Commission obliged through its policy statement, U.S.S.G § 1B1.13, which was amended in November 2023 to modify and add categories. *See* U.S.S.G. § 1B1.13(b). The amended policy statement also now covers motions filed by the defendant. § 1B1.13(a); *United States v. Washington*, 122 F.4th 264, 266 (6th Cir. 2024).

While Taylor erroneously relies on the pre-amendment standard (ECF No. 283, PageID.4743) in which district courts in this Circuit had "discretion to define 'extraordinary and compelling' on their own initiative," *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021), it does not affect the Court's analysis. Under either standard, the Court can consider a defendant's medical condition. *See* § 1B1.13(b)(1).

**1.**

Taylor contends that her illnesses and "the subpar medical treatment inherent in her present prison setting are clearly 'extraordinary and compelling' reasons that warrant compassionate release." (ECF No. 283, PageID.4743.)

But the Sixth Circuit has made clear that "medical conditions that existed at the time of sentencing 'cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *United States v. Pratt*, No. 24-5636, 2025 U.S. App. LEXIS 7270, at *3 (6th Cir. Mar. 27, 2025) (quoting *United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021)). Taylor's Presentence Report included the following medical conditions: fibromyalgia, carpel tunnel, degenerative potential disks in her back, arthritis in her ankles, chronic migraines, colon issues, acid reflux, restless legs, high blood pressure, testing regarding stomach cancer, and hemorrhaging cysts on her ovaries. (Presentence Investigation Report, ¶ 51.) These are the very conditions raised in her motion. (ECF No. 283, PageID.4741.) And they are the very conditions the Court considered at sentencing. Thus, they cannot constitute "extraordinary and compelling reasons" for compassionate release. *See United States v. Smith*, No. 23-5519, 2024 U.S. App. LEXIS 5719, at *2 (6th Cir. Mar. 8, 2024) (affirming denial of

compassionate release motion where defendant's medical conditions were exhaustively considered during his sentencing); *United States v. Johnson*, No. 24-3487, 2025 U.S. App. LEXIS 2519, at *4 (6th Cir. Feb. 4, 2025) ("Because the medical conditions that Johnson cites in his compassionate-release motion were known to the district court at sentencing, the conditions are not extraordinary and compelling reasons for early release."); *United States v. Pryor*, 2025 U.S. App. LEXIS 14720, at *8 (6th Cir. June 13, 2025) (explaining that "if [defendant's] post-sentencing medical condition was 'anticipated' by the district court at sentencing and 'considered' as a 'mitigating factor[]' in imposing the sentence, associated health consequences later coming to fruition are not extraordinary or compelling").

The same is true for the medical conditions of Taylor's husband and her argument that "[h]e desperately needs his wife to help care for him." (ECF No. 283, PageID.4741.) These facts were also known and considered at sentencing. (ECF No. 253, PageID. 3432, 3442, 3443, 3446, 3448.) So they too fail to rise to the level of extraordinary and compelling post-sentencing changes.

Additionally, Taylor has failed to provide any medical records or other evidence to support her need for immediate colorectal surgery. Nor has she shown that the BOP is unable or unwilling to provide this care. (ECF No. 283, PageID.4745.) While she alleges "sub-par conditions" at FPC Pekin where she is presently detained (*id.*),

she provides no detail, affidavits, reports, records, etc., to enable the Court to evaluate them, let alone find that they warrant her immediate release.[1]

In sum, in delaying Taylor's sentencing, in granting her a significant downward variance, and even in the scheduling of her self-surrender, the Court considered Taylor's serious health conditions and those of her husband. "[A] defendant cannot repackage factors from [her] sentencing and call them extraordinary and compelling." *United States v. Parks*, No. 24-5566, 2025 WL 1069308, at \*2 (6th Cir. Apr. 9, 2025). This is simply not a basis to further reduce Taylor's sentence.

**2.**

Taylor fares no better in claiming her medical conditions render her vulnerable to severe complications from COVID-19. (ECF No. 283, PageID.4743.) The Sixth Circuit has held that "the availability of safe and effective vaccines all but eliminates COVID-19 as a reason for compassionate release." *United States v. Pittman*, No. 23-1035, 2023 U.S. App. LEXIS 32003, at \*4 (6th Cir. Dec. 4, 2023); *United States v. Carpenter*, No. 23-6039, 2024 U.S. App. LEXIS 25521, at \*4 (6th Cir. Oct. 9, 2024). And Taylor makes no claim that she lacks access to the vaccine or a booster shot.

---

[1] Taylor's motion states that "[a]ll the last 5 years her medical records were lost in transit after she self-surrendered to the BOP on December 17, 2024." (ECF No. 283, PageID.4739.) The Court understands that Taylor has moved facilities several times and may have lost records in the shuffle. But Taylor's treating doctors undoubtedly have access to her pre-detention medical records and, in the Court's experience, BOP treatment records are stored electronically.

Thus, Taylor lacks an extraordinary and compelling circumstance warranting a sentence reduction. This forecloses relief under § 3582(c)(1)(A) without the need to address the § 3553(a) factors. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (explaining that if any one of the "prerequisites . . . is lacking," the district court "do[es] not need to address the others").

### III.

For these reasons, Taylor's emergency motion for compassionate release (ECF No. 283) is DENIED.

IT IS SO ORDERED.

Dated: February 10, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
United States District Judge